**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
NEWPORT NEWS DIVISION

**UNITED STATES of AMERICA,**

    RESPONDENT,

v.                                CRIMINAL CASE NO.:     4:06CR36
                                        CIVIL CASE NO.:       4:07CV119

**VICTOR MARCOS DaFONSECA,**

    DEFENDANT AND PETITIONER.

## OPINION and ORDER

This matter is before the Court on Defendant Victor Marcos DaFonseca's ("DaFonseca" or "Defendant") Motion under 28 U.S.C. § 2255 ("§ 2255") to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Doc. 38. For the reasons that follow, the first and second claims for relief set forth in Defendant's § 2255 Motion are **DENIED**. The Court reaches no conclusion as to Defendant's third claim for relief at this point in the proceedings.

### I. PROCEDURAL AND FACTUAL HISTORY[1]

On February 14, 2006, a criminal complaint alleging violations of 18 U.S.C. §§ 2251(a) and 2252(A) was filed against Defendant. Doc. 1. That same day, the Court issued an arrest warrant for Defendant. Defendant was arrested on February 15, 2006. Doc. 2. On March 15, 2006, Defendant was indicted on one (1) count of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) (Count 1), and five (5) counts of possession of child pornography, in violation of 18 U.S.C. § 2252(A) (Counts 2-6). Doc. 8.

---

[1] This section does not necessarily include the entire procedural and factual history in this case, but rather notes events and information relevant to the issues before the Court.

<u>(a) May 5, 2006 Guilty Plea Hearing</u>

On May 5, 2006, Defendant pled guilty to Count 1 of the indictment.  Docket No.

4:06cr36.   Defendant pled guilty pursuant to a plea agreement with the Government ("the Plea

Agreement").  Doc. 15.  Defendant was represented by Assistant Federal Public Defender

Arenda Wright Allen.  The Plea Agreement was signed by the Assistant United States Attorney,

Defendant's counsel, and Defendant himself.  Specifically, the page where Defendant signed the

agreement included the following statement:

> I hereby agree that I have consulted with my attorney and fully understand all
> rights with respect to the pending criminal Information [sic].  Further, I fully
> understand all rights with respect to 18 U.S.C. § 3553 and the provisions of the
> Sentencing Guidelines Manual that may apply in my case.  I have read this plea
> agreement and carefully reviewed every part of it with my attorney.  I understand
> this agreement and voluntarily agree to it.

Doc. 15 at 12.  Additionally, all three (3) individuals initialed the bottom right-hand corner of

each page of the twelve (12) page document.  <u>See</u> Doc. 15.

As part of Defendant's Plea Agreement, Defendant waived his right to appeal any lawful

sentence, so long as it was within the statutory maximum for the offense to which he pled guilty.

<u>Id.</u> at ¶ 5.  Paragraph five (5) of the plea agreement states:

> The defendant also understands that Title 18, United States Code, Section 3742
> affords a defendant the right to appeal the sentence imposed.  Nonetheless, the
> defendant knowingly waives the right to appeal the conviction and any sentence
> within the maximum provided in the statute of conviction (or the manner in which
> that sentence was determined) on the grounds set forth in Title 18, United States
> Code, Section 3742 or on any grounds whatsoever, in exchange for the
> concessions made by the United States in this plea agreement.  This agreement
> does not affect the rights and obligations of the United States as set forth in Title
> 18, United States Code, Section 3742(b).

<u>Id.</u> at ¶ 5.  Moreover, the Plea Agreement informed Defendant that by pleading guilty he waived

his right to a jury trial on sentencing factors.  <u>Id.</u> at ¶ 4.  Page two (2) of the Plea Agreement also

stated that "[t]he defendant is satisfied that the defendant's attorney has rendered effective assistance."  <u>Id.</u> at ¶ 3.  Like all other pages of the agreement, on the page including this statement, the Defendant, Defendant's counsel, and the Assistant United States Attorney each initialed the bottom right-hand corner of the page.  <u>See Id.</u>

Incident to Defendant's guilty plea, Defendant also signed a Statement of Facts, setting forth certain events substantiating the offense to which he pled guilty.  Doc. 16.

At the hearing held on May 5, 2006 where the Court accepted Defendant's guilty plea, the Court went to great lengths to question Defendant to make sure he understood the consequences of pleading guilty and his responsibilities and obligations under the Plea Agreement.  <u>See</u> Doc. 34 (Guilty Plea Hrg. Trans.). The Court asked Defendant whether he read the agreement fully, whether he understood the agreement in full, and whether he wanted to enter into the agreement with the United States.  Doc. 34 at 10-11.  To each of these questions, Defendant responded in the affirmative.  <u>Id.</u>  The Court informed Defendant that, ". . .you are also giving up your right to appeal this case, which means that the Judge can give you any punishment up to the maximum permitted by the statute, and you have no right to appeal that finding.  Do you understand that?" <u>Id.</u> at 11.  Defendant responded, "Yes, I do, sir." <u>Id.</u> at 12. The Court also inquired whether anyone had made Defendant any promises as to what his punishment would be and whether anyone forced Defendant to sign the agreement against his will.  <u>Id.</u> at 12.  To each of these questions, Defendant responded, "No, sir."  <u>Id.</u>

At the hearing, the Court also informed Defendant that Defendant's sentence would be determined at sentencing and that while the Court could not predict what that sentence would be, the Court could state that Defendant's sentence would fall within the statutory mandatory

minimum and maximum of Defendant's count of conviction.  Doc. 34 at 8.  The Court informed

Defendant, ". . . [t]he only thing I can tell you today is what the maximum and minimum will be.

The minimum punishment for this offense is 15 years' confinement, the maximum 30 years."  Id.

Further, the Court informed Defendant, "I can tell you that if the sentence turns out to be more

severe than you hoped it would be or expected it to be, that would not give you the right to

change your mind about pleading guilty.  Do you understand that?"  Id. at 11.  Defendant

responded, "Yes, I do, sir."  Id.

Also at the hearing, the Court asked Defendant, "are you fully satisfied with the counsel,

representation and advice you have received from your attorney in this proceeding?"  Doc. 34 at

10.  To this, Defendant responded, "Yes, I am, sir."  Id.

After questioning Defendant regarding the consequences of pleading guilty and

Defendant's responsibilities and obligations under the Plea Agreement, the Court accepted

Defendant's plea of guilty.  In doing so, the Court found Defendant's guilty plea, ". . . was made

freely and voluntarily and with a full understanding of his constitutional rights . . ."  Id. at 19.

<u>(b) October 25, 2006 Sentencing Hearing</u>

Defendant's sentencing hearing was held on October 25, 2006.  Prior to the hearing, the

United States Probation Office prepared a Presentence Investigation Report ("PSR").  Among

other items, this document included a calculation of Defendant's sentencing guideline range.

Defendant's restricted guideline range was two hundred ninety-two (292) to three hundred sixty

(360) months' imprisonment.[2]  PSR at Worksheet D.  The PSR indicated that Defendant had one

---

[2] Defendant's guideline range was two hundred ninety-two (292) to three hundred sixty-five (365) months' imprisonment.  However, because Defendant's count of conviction included a statutory maximum of thirty (30) years' imprisonment, Defendant's guideline range was capped at three hundred sixty (360) months' imprisonment.

resolved objection to the accuracy of the PSR regarding his employment history, and no unresolved objections.  PSR Addendum at A-1.

At the sentencing hearing, Defendant was represented by Polly Chong, a court-appointed attorney.[3]  The Court asked Ms. Chong whether she had an opportunity to fully review the PSR with her client and whether Defendant had indicated to her that the factual content of the report was correct.  Doc. 35 at 3 (Sent. Hrg. Trans.).  Ms. Chong stated she had fully reviewed the PSR with Defendant.  Id.  Apart from the objection regarding Defendant's employment history, Ms. Chong indicated that the Defendant had indicated to her that the factual content of the PSR was correct.  Id.  The Court asked Ms. Chong whether she had reviewed with Defendant the application of the facts of his case to the Sentencing Guidelines and whether Defendant understood he was facing a range of imprisonment of two hundred ninety-two (292) to three hundred sixty (360) months.  Id. at 3-4.  To both questions, Ms. Chong answered in the affirmative.  Id.

The Court then questioned Defendant to confirm that Ms. Chong's statements were truthful.  The Court asked Defendant whether he had reviewed the PSR with his attorney, whether he had discussed with his attorney the application of the guidelines to the facts in the PSR, whether the facts in the PSR were accurate, whether he had discussed with his attorney the application of the facts to the sentencing guidelines, and based on that discussion whether it appeared to Defendant that the facts had been properly applied to the sentencing guidelines.  Id. at 4-5.  To each of these inquiries, Defendant answered in the affirmative.  Id.  Further, the Court explained to Defendant how his sentence would be determined, noted that it was possible that the

_____

[3] Chong had been substituted for AFPD Allen on September 20, 2006.

Court could impose a sentence outside the recommended guidelines, and again asked Defendant

if he understood:

> In your particular case, the maximum punishment under the statute is 360 months, which is actually less than the maximum guidelines. So the Court cannot impose a sentence on you that's greater than the guideline range of 360 months. Now, what the Court will do is look at the guidelines and the sentencing factors and determine what a fair sentence would be. The Court normally imposes a sentence within the guidelines, but there are times when the Court imposes a sentence which is greater or lesser than that recommended by the guidelines. Do you understand that?

Id. at 5. To this question, Defendant answered, "Yes, sir, I do." Id.

After questioning Defendant and his counsel, the Court accepted the factual content of

the PSR as true and accurate for the purposes of the hearing. Id. at 5-6.

At the hearing, Defendant presented the testimony of Dr. Thomas A. Pasquale, an expert

in the field of clinical and forensic psychology. Id. at 7. Dr. Pasquale had previously evaluated

Defendant. Id. Dr. Pasquale testified that Defendant did not qualify for a diagnosis of

pedophilia and that testing did not demonstrate Defendant had a sexual interest in young

children. Id. Dr. Pasquale also stated that Defendant had a moderate to low likelihood for

sexual reconviction within ten (10) years of his release from incarceration.[4] Id. at 12.

After Dr. Pasquale was excused, the Government noted that it had filed an objection to

the PSR requesting that Defendant's guideline computation be enhanced to reflect that

Defendant had obstructed justice by contacting the victim while Defendant was released on

bond. Id. at 24-25; Doc. 30. The Court noted Defendant's guideline range exceeded the

statutory maximum sentence and therefore if the Court agreed to impose an enhancement, it

---

[4] The Defendant also called his employer, Marcus Neville, to testify on his behalf. Doc. 35 at 27-29.

could not increase the guideline sentence.  Doc. 35 at 25.  For that reason, the Court stated that it "[did not] think that the enhancement is really relevant to the sentence."  Id.

The Government's only witness was the victim's father, who testified because he wished to exercise his right to do so under the Justice for All Act.  Id. at 29-31.

After hearing argument from counsel regarding the appropriate term of imprisonment for Defendant, Defendant exercised his right to make an unsworn statement to the Court.  Id. at 42. The Court then announced its sentence.  Id. at 45.  The Court sentenced Defendant to three hundred forty eight (348) months' imprisonment, to be followed by five (5) years' supervised release.  Id.

(c) § 2255 Motion

Defendant did not appeal his conviction or sentence.  Docket No. 4:06cr36.

On November 7, 2007, Defendant filed the instant motion under 28 U.S.C. § 2255 ("§ 2255") to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  Doc. 38.  In his § 2255 Motion, Defendant claims three (3) bases for relief:

1.   Defendant's conviction was "obtained by plea of guilty which was unlawfully induced or not made voluntarily nor with understanding of the nature of the charge and the consequences of the plea";

2.   Defendant's "Guilty Plea counsel was ineffective for counseling the defendant/Petitioner to waive any right to appeal any sentence within the statutory limits . . ." and "Petitioner was also victimized by ineffective assistance of sentencing counsel"; and

3.   Defendant was denied the right of appeal because "the Petitioner was abandoned [by his counsel after sentencing] and had no way to effectuate his appeal."

Doc. 38 at 6.

On December 11, 2007, the Court ordered the Government to respond to Defendant's §

2255 Motion within sixty (60) days.  Doc. 39.  On January 31, 2008, the Government filed a motion for extension of time to file its response.  Doc. 40.  The Court granted that motion on February 5, 2008.  Doc. 41.  On March 7, 2008, the Government filed its response to Defendant's § 2255 Motion.  Doc. 42.  Defendant did not file a reply to the Government's response before his opportunity to do so expired.  <u>See</u> Docket No. 4:06cr36.

The Court now reaches Defendant's first and second claims for relief, while making no ruling on Defendant's third claim for relief at this time.

## II.  Legal Principles

### (a) Procedural Requirements

A collateral challenge to a conviction or sentence, such as a motion pursuant to § 2255, "may not do service for an appeal."  <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982) (citations omitted).  Accordingly, for a claim to be viable through a § 2255 petition, it must be raised on direct appeal; however, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  <u>Frady</u>, 456 U.S. at 162, 165; <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-93 (4th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1010 (2000).  Similarly, where a contention was not contemporaneously objected to or raised before the trial court, the claim is properly denied as a collateral challenge.  <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90-91 (1977).  The contemporaneous objection rule is founded by "society's justified interests in the finality of criminal judgments."  <u>Frady</u>, 456 U.S. at 175.

However, there are several narrow exceptions to the contemporaneous objection rule.  First, the claimant may show "cause" excusing his procedural default, and "actual prejudice" resulting from the complained of action.  <u>Frady</u>, 456 U.S. at 167 (citing <u>Wainwright</u>, 433 U.S. at

90-91); <u>Mikalajunas</u>, 186 F.3d at 493 ("The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.").  Second, the petitioner may show, by a greater standard of proof, a constitutional violation resulted in the conviction of a person "actually innocent" of the substantive offense.  <u>Dretke v. Haley</u>, 541 U.S. 386, 393 (2004) (citations and internal quotations omitted).  Regarding a claim of actual innocence of the substantive offense, the petitioner must show he "did not commit the crime of which he was convicted," i.e., he is factually innocent. <u>Mikalajunas</u>, 186 F.3d at 494.  Third, the Defendant may prove ineffective assistance of counsel "either as a ground for cause [under exception one] or as a free-standing claim for relief." <u>Dretke</u>, 541 U.S. at 394; <u>United States v. Defusco</u>, 949 F.2d 114, 120-21 (4th Cir. 1991).

Presently, Defendant did not file a direct appeal, and contends his attorney "abandoned" Defendant after his sentencing and therefore Defendant was not able to file an appeal.  Doc. 38 at 6; Docket No. 4:06cr36.  Moreover, in each of Defendant's first two (2) claims, Defendant asserts his attorneys were constitutionally ineffective as bases for relief.  Doc. 38 at 6. Accordingly, the Court assumes for the purpose of ruling on Defendant's first and second claims that each claim is procedurally proper.

<u>(b) Standard of Review</u>

In a § 2255 claim, the petitioner bears the burden of proof, and must establish his claim(s) by a preponderance of the evidence.  <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958) (<u>per curiam</u>) (citations omitted).  The Court may refuse to grant a hearing if the "files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255 ¶ 2; <u>United States v. Yearwood</u>, 863 F.2d 6, 7 (4th Cir. 1988) (citations omitted).

Under § 2255, the defendant may claim one or more of the following grounds for relief:

1. A violation of the Constitution or laws of the United States;
2. The Court was without jurisdiction to impose such sentence; or
3. The sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255 ¶ 1. Regarding an alleged non-constitutional error of law, the claimed error must constitute "a fundamental defect which inherently results in a complete miscarriage of justice" to be cognizable in a § 2255 petition. United States v. Addonizio, 442 U.S. 178, 185 (1979) (citation omitted). Additionally, the clause that provides, "the sentence . . . is otherwise subject to collateral attack," allows for "claimed errors of fact." Addonizio, 442 U.S. at 185-86. However, a claimed error of fact must be "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." Addonizio, 442 U.S. at 186 (citation omitted). Moreover, the Fourth Circuit has cautioned against reviewing the sufficiency of the evidence upon a § 2255 motion, stating, "[p]risoners adjudged guilty of crime should understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty." Taylor v. United States, 177 F.2d 194, 194 (4th Cir. 1949) (per curiam); Miller, 261 F.2d at 547 ("[T]he point raised goes to the sufficiency of the evidence which can not be challenged under Section 2255.") (citation omitted).

Lastly, as Defendant is proceeding pro se in this matter, his filings are entitled to a more liberal standard of review. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 99 (1978).

## (c) Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668, 671 (1984), the Supreme Court of the United

States "consider[ed] the proper standards for judging a criminal defendant's contention that the Constitution requires a conviction or [] sentence to be set aside because counsel's assistance at the trial or sentencing was ineffective."  In order for a defendant to show his attorney was constitutionally ineffective, the defendant must prove counsel's performance was both deficient and that his "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.  In weighing this claim of attorney ineffectiveness, which essentially "is an attack on the fundamental fairness of the proceeding whose result is challenged," the Court "must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 697, 695.

Respecting whether an attorney's performance is deficient, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  Moreover, the Court must weigh the attorney's performance under a "highly deferential" standard. Strickland, 466 U.S. at 689.  The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  Counsel's actions are strongly presumed to fall "within the wide range of reasonable professional assistance" and to be considered a part of the attorney's strategy in the case. Strickland, 466 U.S. at 689 (citation omitted).  An attorney has an obligation "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  Whether an attorney reasonably declines to undertake an investigation "may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691.  Specifically, if a defendant gives his attorney reason to believe that certain inquiries "would be fruitless or even harmful,

counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 691.

Regarding the second prong of the analysis, prejudicial effect, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Where a defendant alleges ineffective assistance of counsel following the entry of a guilty plea, he has a higher burden to meet. In such circumstances, "a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have plead guilty and would have insisted on going to trial.'" Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

## III. ANALYSIS

As noted, Defendant's § 2255 Motion claims three (3) bases for relief. While Defendant's explanation of his first and second grounds for relief claim ineffective assistance of his counsel, Assistant Federal Public Defender Arenda Wright Allen, prior to and during his guilty plea, the explanation of Defendant's second ground also includes allegations of ineffective assistance by his counsel at sentencing, Polly Chong. See Doc. 38 at 6. Therefore, Defendant generally has claimed that both counsel were constitutionally ineffective. Accordingly, the claims against each counsel are discussed separately below.

## (a) Ineffective Assistance of Counsel Claims Against Assistant Federal Public Defender Allen

In his § 2255 Motion, Defendant claims that his counsel at the time he pled guilty, Assistant Federal Public Defender Arenda Wright Allen ("AFPD Allen"), was constitutionally ineffective for several reasons: (1) because she failed to provide him adequate advice and therefore Defendant "did not have a full appreciation that he stood a realistic chance of being sentenced to the maximum sentence, or close to it"; (2) because she did not fully apprise Defendant "of the upward departures or sentencing enhancements that could be applied to him"; and (3) because she advised Defendant to waive any right to appeal any sentence within the statutory limits.  See Doc. 38 at 6.

Defendant's claim that AFPD Allen's assistance was constitutionally ineffective is without merit for a number of reasons.  First, Defendant's statements during his guilty plea colloquy indicate that he was pleased with the representation provided by AFPD Allen and that he knew that he would be sentenced to between fifteen (15) and thirty (30) years' imprisonment. "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."  Fields v. Attorney General of State of Md., 956 F.2d 1290, 1299 (4th Cir. 1992).  At the hearing, the Court asked Defendant, "are you fully satisfied with the counsel, representation and advice you have received from your attorney in this proceeding?" Doc. 34 at 10.  To this question, Defendant responded, "Yes, I am, sir."  Id.  Regarding the sentence he faced for pleading guilty, during the plea colloquy the Court made sure that Defendant understood the sentence he could face.  The Court informed Defendant, " . . .[t]he only thing I can tell you today is what the maximum and minimum will be. The minimum punishment for this offense is 15 years' confinement, the maximum 30 years."  Id. at 8.  Further, the Court informed Defendant, "I can tell you that if the sentence turns out to be

more severe than you hoped it would be or expected it to be, that would not give you the right to change your mind about pleading guilty." Id. When asked by the Court if he understood that, Defendant responded that he did. Id. Defendant presents no evidence that suggests these representations were untruthful or involuntary and he is therefore bound by them.

Second, Defendant's acceptance of the Plea Agreement supports the conclusion that he was aware of the term of imprisonment he faced for pleading guilty and that he was satisfied that AFPD Allen had rendered effective assistance. That Plea Agreement, each page of which was initialed by Defendant and whose last page was signed by him, stated the mandatory minimum and maximum terms of imprisonment he faced and included the assertion that "[t]he defendant is satisfied that the defendant's attorney has rendered effective assistance." Doc. 15 at ¶ 3. During Defendant's plea colloquy, the Court made sure Defendant understood his responsibilities and obligations under the Plea Agreement. The Court asked Defendant whether he read the agreement fully, whether he understood the agreement in full, and whether he wanted to enter into the agreement. Doc. 34 at 10-11. Defendant responded in the affirmative to each of these questions. Id. The Court also asked Defendant if he had been made any promises as to what his punishment would be and whether anyone had forced him to sign the agreement against his will. Id. at 12. To this question, Defendant responded, "No, sir." Id. Defendant has provided no evidence to suggest that the acceptance of his Plea Agreement was involuntary or that he did not understand his responsibilities under the Plea Agreement.

Third, regarding Defendant's argument that AFPD Allen did not fully apprise Defendant "of the upward departures or sentencing enhancements that could be applied to him", as explained, his statements during the plea colloquy dispute this assertion. Further, this allegation

is also disputed by AFPD Allen herself.  AFPD Allen states that she met with Defendant several times before he signed the Plea Agreement.  Doc. 42, Exb. A (Affidavit of Arenda L. Wright Allen) ("Allen Affidavit").  AFPD Allen states during her meeting with Defendant on April 5, 2006, he indicated that he wanted to plead guilty to Counts Two (2) through Six (6) because "the guidelines for those counts were more favorable."  Id. at ¶ 5.  AFPD Allen states that she again met with Defendant on April 26, 2006 and informed him that the Government had rejected his plea offer and "countered with a plea to Count One."  Id. at ¶ 6.  AFPD Allen states that, at this meeting, she "again reviewed the guideline sections pertaining to Count One as well as the enhancements which might apply."  Id.  Further, AFPD Allen states that "[Defendant] read these sections and did the math."  Id.  AFPD Allen states that she met with Defendant on April 27, 2006 and that they again reviewed the guidelines as they pertained to Count One.  Id. at ¶ 7.  At that point Defendant indicated that he wanted to plead guilty to Count One.  Id.  Defendant proffers no evidence to support his conclusory statement that AFPD Allen did not advise him "of the upward departures or sentencing enhancements that could be applied to him."  Id.  That statement alone, when measured against the information included in AFPD Allen's affidavit, Defendant's acceptance of his Plea Agreement, and his statements made during his plea colloquy, is inadequate to establish a claim of ineffective assistance of counsel.

Fourth, and finally, Defendant's claim that AFPD Allen's advice that he waive his right to appeal any sentence within the statutory limits evinces ineffective assistance is without merit. AFPD Allen states that Defendant wanted a cooperation agreement with the Government and that he "understood that if he wanted a cooperation agreement, he would have to waive his right to appeal any sentence imposed by the Court."  Id. at pp. 4-5.  Further, Defendant's Plea

Agreement informed him that by pleading guilty he waived his right to appeal the sentence imposed. Doc. 15 at ¶ 5. In addition, during his plea colloquy, Defendant indicated that he understood his responsibilities and obligations under the Plea Agreement. Doc. 34 at 10-11. The Court even informed Defendant that he was giving up his right to appeal, "which means that the Judge can give you any punishment up to the maximum permitted by the statute, and you have no right to appeal that finding." Id. at 12. When asked by the Court whether he understood this ramification of his plea of guilty, Defendant stated, "Yes, I do, sir." Id. For these reasons, Defendant has not established that AFPD Allen's advice that he waive his right to appeal was constitutionally ineffective assistance.

Defendant's claims that AFPD Allen's assistance was constitutionally ineffective are wholly without merit. The record clearly demonstrates that Defendant previously believed AFPD Allen's assistance was adequate, that he understood his responsibilities and obligations under the Plea Agreement, and that he understood that he could be sentenced to a term of imprisonment anywhere between fifteen (15) and thirty (30) years. Accordingly, for these reasons, Defendant's first claim for relief is without merit and is **DENIED**. To the extent that Defendant's second claim of relief claims AFPD Allen's assistance was constitutionally ineffective, it too is **DENIED**.

(b) Ineffective Assistance of Counsel Claims Against Court-Appointed Attorney Chong

In addition to claiming AFPD Allen was constitutionally ineffective, Defendant makes a similar claim against his counsel at the time of his sentencing, Polly Chong ("Chong"). Defendant argues Chong was ineffective because: (1) she failed to adequately move for a continuance of the sentencing date; (2) she failed to adequately prepare for sentencing, she failed

to understand the law surrounding the case, and she failed to fully understand the Sentencing

Guidelines as they applied to Defendant; (3) she failed to object to numerous errors in the PSR

"that added significant time to [Defendant's] Sentencing Guidelines"; and (4) she "failed to

make any significant argument or marshal any witnesses on behalf of [Defendant] at time of

sentencing."  Doc. 38 at 6.

       Defendant's claims that Chong's assistance was constitutionally ineffective are without

merit.  Defendant's first allegation is that Chong "failed to adequately move for a continuance of

the sentencing date."  Doc. 38 at 6.  Defendant proffers no evidence to support this allegation

and the record supports the conclusion that the allegation is without merit.  On September 20,

2006, the Court granted AFPD Allen's motion to withdraw.  Doc. 23.  The Court then appointed

Chong to represent Defendant because she was available on the sentencing date, October 25,

2006.  See  Doc. 37 at 2 (Transcript of Motion Hearing held on October 12, 2006).  On October

2, 2006, Chong filed a motion requesting a continuance of the sentencing date.  Doc. 25.  The

Government opposed the motion to continue and the Court held a hearing on the matter on

October 12, 2006.  At that hearing, Chong stated that she had met with Defendant on September

26, 2006 at Western Tidewater Regional Jail.  Doc. 37 at 3.  During their discussion, Defendant

raised issues that Chong believed she needed to research.  Id.  Chong advised the Court that she

had "done the research on the matter" and stated that Defendant had indicated to her, personally

and in writing, that he did not desire to withdraw his guilty plea and that he was satisfied with

the research she had performed.  Id.  Chong then explained that the sole basis for her request for

a continuance was that she was having difficulty contacting Dr. Pasquale and believed she

needed to talk with him regarding his evaluation of Defendant.  Id.  After hearing this

explanation, the Court noted that Dr. Pasquale had testified many times and that if he were subpoenaed, he would attend the sentencing hearing to testify.  Id.  The Court stated that if Chong had continued difficulty in contacting Dr. Pasquale that she should inform the Court.  Id. The Court held, however, that Chong's difficulty in contacting Dr. Pasquale, alone, was not reason enough to continue the sentencing.  Id. at 5.  As previously noted, Dr. Pasquale did testify at Defendant's sentencing hearing and therefore the concern that was the basis for Chong's motion to continue did not materialize.  Accordingly, Defendant's claim that Chong "failed to adequately move for a continuance of the sentencing date" is without merit because Defendant has not established that Chong's performance on this issue fell below the objective standard of reasonableness.

Defendant next claims that Chong's assistance was constitutionally ineffective because she failed to adequately prepare for sentencing, she failed to understand the law surrounding the case, and she failed to fully understand the Sentencing Guidelines as they applied to Defendant. Doc. 38 at 6.  Again, Defendant provides no evidence to support these accusations.  Further, the record supports a finding that Chong's performance was reasonable and that Defendant found her performance to be adequate.  Chong states that she met with Defendant on multiple occasions prior to sentencing.  See Doc. 42, Exb. C at ¶ 4 (Affidavit of Polly Chong) ("Chong Affidavit").  At different points during these meetings, Chong states that she: reviewed the Plea Agreement with Defendant; reviewed the criminal code section of his charged offense with Defendant; reviewed the appeal procedures with Defendant; reviewed the PSR and applicable guidelines with Defendant; reviewed strategy for the sentencing hearing; discussed with Defendant the consequences of withdrawal of his guilty plea; and reviewed Defendant's

objections to the PSR.  Id.  Also, on the date Defendant was sentenced, Chong states she met

with Defendant and again reviewed with him the PSR, the addendum and the sentencing

guidelines.  Id.  In addition to her meetings with Defendant prior to sentencing, Chong states she

also took a number of actions to adequately prepare for Defendant's sentencing.  Chong states

she performed legal research at Defendant's request, spoke with Defendant's Probation Officer

several times, met with Defendant's employer, and met with Dr. Pasquale.  Id.

Defendant provides no evidence to support his allegations that Chong failed to

adequately prepare for sentencing, failed to understand the law surrounding the case, and failed

to fully understand the Sentencing Guidelines as they applied to Defendant.  Further, as

explained, these allegations are refuted by Chong's explanation of her preparation for

Defendant's sentencing.  Finally, Defendant's own statements made during his sentencing

hearing undermine his allegations.  At that hearing, the Court asked Defendant whether he had

reviewed the PSR with his attorney, whether he had discussed with his attorney the application

of the guidelines to the facts in the PSR, whether the facts in the PSR were accurate, whether he

had discussed with his attorney the application of the facts to the sentencing guidelines, and

based on that discussion whether it appeared to Defendant that the facts had been properly

applied to the sentencing guidelines.  Doc. 35 at 4-5.  To each of these inquiries, Defendant

answered in the affirmative.  Id.  For these reasons, Defendant's allegations are without merit.

Defendant's third allegation against Chong is that she failed to object to numerous errors

in the PSR "that added significant time to [Defendant's] Sentencing Guidelines."  Doc. 38 at 6.

This allegation lacks merit.  Defendant fails to identify these alleged "numerous errors" in his

PSR.  In addition, Defendant's statements at his sentencing hearing indicate that he reviewed the

PSR and that he believed the facts included therein were accurate.  <u>See</u> Doc. 35 at 4-5.  Further,

Chong states that she reviewed Defendant's PSR with him on multiple occasions and the only

section of the PSR that he stated was incorrect was paragraph 74.  Chong Affidavit at ¶ 4.

Chong asked Defendant "if he objected to anything else [in the PSR], and he said no."  <u>Id.</u>

Paragraph 74 of Defendant's PSR discussed his employment status between 1983 and 1997.

Chong filed the position of Defendant with respect to the sentencing factors on October 12, 2006

and therein objected to paragraph 74 of the PSR.  Doc. 28.  This objection was resolved prior to

sentencing.[5]  For these reasons, Defendant's claim that Chong's assistance was constitutionally

ineffective because she failed to object to numerous errors in the PSR is without merit.

Defendant has not established that Chong's actions regarding objections to the PSR fell below

the objective standard of reasonableness.

Finally, Defendant's fourth allegation against Chong is that she was ineffective for

"failing to make any significant argument or marshal any witnesses on behalf of the defendant at

time [sic] of sentencing."  Doc. 38 at 6.  This claim lacks merit.  At sentencing, Chong called

two (2) witnesses to testify on Defendant's behalf: Dr. Pasquale and Defendant's employer,

Marcus Neville.  Doc. 35 at 7-29.  Chong's direct examination of these witnesses was

reasonable; Dr. Pasquale testified as to his evaluation of Defendant and Mr. Neville testified that

Defendant was a "very satisfactory" employee.  <u>Id.</u> at 27.  On this issue, Defendant fails to

identify any witnesses apart from Dr. Pasquale and Mr. Neville that should have been called to

---

[5] As noted in the addendum to the PSR, "At the defendant's request, [paragraph 74] has been
amended to reflect that from 1983 until he moved to the United States, the defendant was
reportedly self-employed in South Africa.  After 1997, while living in California, he reportedly
worked at Lokfast Company, Machinery Network, and WC Burrows & Associates."  PSR at A-
1.

testify and also fails to explain how the testimony of Dr. Pasquale or Mr. Neville prejudiced him. Accordingly, Defendant has failed to establish that Chong's conduct at sentencing regarding the witnesses called to testify was constitutionally ineffective.

On the issue of Chong's alleged failure to make any significant argument at sentencing, Defendant is incorrect.  Chong did argue on Defendant's behalf at sentencing.  <u>See</u> Doc. 35 at 35-39.  During that argument, Chong attempted to put Defendant's relationship with the victim in a better light, identified a number of Defendant's "redeeming qualities", argued that Defendant had accepted responsibility, noted Defendant's lack of a criminal history, and asked the Court for leniency in sentencing.  <u>Id.</u>  Chong's argument at sentencing was objectively reasonable.  Accordingly, Defendant's claim that Chong failed to make "any significant argument . . . on behalf of the defendant at time of sentencing" lacks merit and Defendant has failed to establish that the argument made by Chong at sentencing was constitutionally ineffective.

Defendant's allegations against Chong outlined in his second claim for relief all lack merit.  For the reasons explained herein, for each of his allegations, Defendant has failed to establish that Chong's conduct was constitutionally ineffective.  Accordingly, Defendant's second claim for relief is without merit and is **DENIED**.

## IV.  CONCLUSION

For the reasons explained herein, Defendant's first and second claims for relief as outlined in his § 2255 Motion are **DENIED**.   The Court reaches no conclusion as to the merit of Defendant's third claim for relief.  <u>Id.</u>

Under Rule 54, subsections (a) and (b), of the Federal Rules of Civil Procedure, the

denial of the first two claims outlined in Defendant's § 2255 Motion will not be a final judgment for purposes of appeal until the Court has also resolved Plaintiff's third claim for relief.  As a result, Plaintiff may not yet appeal the Court's denial of his first and second claims for relief.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to all counsel of record and the Defendant.

It is so **ORDERED**.


_____ /s/ _____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
August 23, 2008